Pat Bradley vs. The State.

---

PAT BRADLEY VS. THE STATE.

1. RAPE.
   Force is an essential element of the crime of rape; it must be committed forcibly and against the will of the female upon whom it is committed.

2. BURGLARY WITH INTENT TO COMMIT RAPE: *Indictment.*
   In an indictment for a burglarious entry, with the intent to commit a rape, etc., it is unnecessary to allege an assault. (For form of the indictment, see Op.)

APPEAL from *Bradley* Circuit Court.

Hon. THEODORIC F. SORRELLS, Circuit Judge.

*Compton*, for appellant.

*Henderson, Attorney General, contra.*

TURNER, J.:

At the March Term, 1878, of the Circuit Court of Bradley County, Pat Bradley, a negro, was indicted for burglary.

The indictment is in the following words and figures:

State of Arkansas }
   against          } *Indictment for Burglary.*
Pat Bradley.        }

Bradley County Circuit Court, March Term, A. D. 1878.

The grand jury of Bradley County, in the name and by the authority of the State of Arkansas, accuse Pat. Bradley of the crime of burglary committed as follows, to-wit:

Pat Bradley vs. The State.

The said Pat. Bradley, in the county aforesaid, on or about 11 o'clock of the night time of the 14th day of July, A. D. 1877, did unlawfully, feloniously and burglariously enter the dwelling house of one E. D. Sled, with the intent to commit a felony, to-wit: an assault with intent to commit rape in and upon the body of one Mary J. Sled, a female, the wife of the said E. D. Sled, with intent feloniously to ravish and carnally know the said Mary J. Sled, forcibly and against her will, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Arkansas.          J. C. BARROW,
                                        Prosecuting Attorney.

The defendant was arraigned, pleaded not guilty, tried and found guilty, and his punishment assessed at imprisonment in the State Penitentiary for three years, whereupon counsel moved the court to set aside the verdict of the jury and grant him a new trial for the following causes:

*First*—Because the verdict of the jury was contrary to law.

*Second*—Because the verdict of the jury was contrary to evidence.

*Third*—Because the verdict of the jury was contrary to the instructions of the court.

*Fourth*—Because the court refused to give the second instruction asked for by the defendant.

*Fifth*—Because the court refused to give the third instruction asked for by the defendant. •

The motion for a new trial was overruled, defendant excepted and took an appeal to this court.

This is an indictment for burglary, an offense defined at common law to be: "A breaking and entering the mansion house of another in the night, with intent to commit some felony within the same, whether such felonious intent be executed or not." 1

Rus. on Crimes, 785; 3 Inst., 63; 1 Hale, 540; 4 Black. Com., 224.

Our statute, however, has modified and changed the common law in some material and important particulars. According to our statutory definition, "Burglary is the unlawfully entering a house, tenement, or other building, boat, vessel or watercraft in the night time with the intent to commit a felony." See Gantt's Dig., 1346, 1347, 1348.

The burglary charged against the defendant, was that on or about 11 o'clock at night of the 14th July, A. D. 1877, he unlawfully, feloniously and burglariously entered the dwelling house of one E. D. Sled, with the intent to commit a felony, to-wit, an assault with intent to commit a rape on the body of Mary J. Sled, a female, the wife of the said E. D. Sled, etc.

The first question presented for our consideration is, did the law and the evidence warrant the finding of the jury? To enable us to determine this question aright, we will briefly review the evidence as set forth in the bill of exceptions, which is in substance as follows:

Mary J. Sled, the prosecutrix, after identifying the defendant, said, "between the hours of 10 and 11 o'clock in the night time on the 14th day of July, 1877, some one came into my room and awoke me by taking hold of my arm and turning me upon my back, pulled up my clothes, put his arm under my neck, got on top of me, pressed upon my thighs, with the other hand he was trying to accomplish his purpose of which I cannot decently speak, with an intention to carry out his design. I then asked who are you? He answered, it is me. I then passed my hand over the back of his head and found it was a negro. I then said get out of the bed whoever you are, and he answered in a whisper, hush. He used force after I said get away. My husband E. D. Sled, was lying in three feet of the bed at the time, I

then called to my husband and told him some negro was in, and to get up and shoot him. Then he ran out. He was barefooted. My husband ran out of the door with his gun and fired in the direction of the gate. It was a dark, but starlight, night. The weather was very warm, and all the doors were open. I did not know who it was that night, but the next morning he came up and confessed to my husband and me that it was him, and begged us not to prosecute him, which we refused to do."

E. D. Sled, husband of the prosecutrix, said, "on the night of the 14th of July, 1877, at about 10 or 11 o'clock at night. I was wakened by my wife calling me, saying there is some one in, the room. I then jumped up, seized my gun, went out of the door and shot my gun in the direction of the gate. I did not know who it was in my house that night, but the next morning Pat. Bradley came to my house and confessed that it was he who was in my house the night before, and begged me not to prosecute him, which I refused to do."

This was all the evidence given in the case.

Whereupon the defendant moved the court to instruct the jury as follows:

*First*—Burglary is the unlawfully entering a house, tenement or other building in the night time, with the intent to commit a felony.

*Second*—Rape is the carnal knowledge of a female forcibly and against her will.

*Third*—An assault with intent to commit rape is an attempt to have carnal knowledge of a female forcibly and against her will.

*Fourth*—In the crime of an assault with intent to commit a rape, force is of the very essence of the offense, and unless in this case the jury believe from the evidence that the defendant, Pat. Bradley, entered the house of E. D. Sled, with the inten-

tion and the design to assault Mrs. M. J. Sled, with the intent to have carnal knowledge of the person of the said Mrs. M. J. Sled, forcibly and against her will, they will acquit the defendant.

*Fifth*—If the jury believe from the evidence, that the said Pat. Bradley entered the house of the said E. D. Sled with the intention of having carnal knowledge of Mrs. M. J. Sled, with her consent, and did not intend to do so without her consent, they will acquit the defendant.

*Sixth*—If the jury believe from the evidence that the defendant, Pat. Bradley, did enter the house of E. D. Sled, at the time as charged in the indictment, they are then to determine as to the design and intention of defendant in making the entry, from all the circumstances attending the transaction as proven in evidence, and that unless they believe from the evidence that the defendant went into the house of E. D. Sled with the design and intention of making an assault with intent to have carnal knowledge of Mrs. M. J. Sled forcibly and against her will, they will acquit the defendant.

*Seventh*—It matters not how the defendant, Pat. Bradley, entered the house of E. D. Sled, unless he did so with the intent of making an assault with the intent to have carnal knowledge of the person of Mrs. M. J. Sled, whether she was willing or not, the jury must acquit.

*Eighth*—If the jury believe from the evidence that the defendant entered the house of E. D. Sled at the time as charged in the indictment with the intent to have carnal intercourse with Mrs. M. J. Sled, while she was asleep, they will acquit.

*Ninth*—If the jury believe from the evidence that the defendant, Pat. Bradley, did enter the house of E. D. Sled at the time as stated in the indictment with the intent to impose himself upon Mrs. M. J. Sled by inducing her to believe he was her husband, and thus have carnal knowledge of her person, he is not guilty and must be acquitted.

*Tenth*—Before the defendant, Pat. Bradley, can be convicted as charged in the indictment, the jury must believe from the evidence that he intended to make an assault, with the intent to gratify his passion upon the person of Mrs. M. J. Sled at all events, and notwithstanding any resistance upon her part.

*Eleventh*—Before the defendant, Pat. Bradley, can be convicted as charged, the State must prove every material allegation in the indictment.

*Twelfth*—If the jury have a reasonable doubt that the defendant, Pat. Bradley, entered the house of E. D. Sled, at the time as stated in the indictment, with the intent to make an assault for the purpose of having carnal knowledge of the person of Mrs. M. J. Sled, forcibly and against her will, and at all events, they will acquit.

The court gave the first, third, fourth, fifth, sixth, seventh, eighth, tenth, eleventh and twelfth instructions, but refused to give the second and ninth.

The second instruction might have been well given, as it was simply the legal definition of rape, but as it is substantially embraced in the third instruction, the defendant cannot complain of the failure to give the second.

The ninth instruction was properly refused, because it implies a state of facts not warranted by the evidence, and this is true of the fifth and eighth, there being no proof in the cause, justifying such instructions.

The instructions given and those refused were all asked for by the defendant, who excepted to the ruling of the court, only in refusing the second and ninth asked for.

The ninth, as we have stated, was rightly refused, while the second might have been given without benefit to the defendant, or injury to the prosecution.

The instructions, taken altogether, were highly favorable to the defendant, and he certainly has no cause to complain of the refusal of the court to give the second and ninth.

The indictment charges the defendant with burglary, in unlawfully, feloniously and burglariously entering the dwelling house of E. D. Sled, on the night of the 14th July, 1877, with the intent to commit a felony, to-wit: an assault with intent to commit a rape on the body of Mary J. Sled, more particularly set forth in the indictment.

Rape is defined to be the carnal knowledge of a female forcibly against her will. See Gantt's Dig., sec. 1300; 3 Inst., 64; 4 Black. Com., 210.

The essence of the crime is that it must be done forcibly and against the will of the female upon whom it is committed.

It is often a matter of great difficulty in trials for rape, and of assaults with intent to commit rape, to determine whether the act complained of was done with or without force, and whether with or without the consent of the party complaining, and this arises from the peculiar character and surroundings of the offense charged.

Force is an essential element in the crime of rape. The term is general, and in its application the quantum of force is not to be taken into consideration, provided the act be consummated against the will of the female.

The English and American books on criminal law abound in numerous cases for this offense, in which the courts have generally adhered rigorously, if not literally, to the ancient definition of the crime, thus enabling many an offender to escape the penalties for rape, whose moral if not real guilt was sufficiently apparent.

The courts have thought it better to stand by the landmarks of a past age and observe the precedents that have come down

to us from our ancestors, rather than to embark in the hazardous experiment of judicial legislation, although it might tend to conform the law on this subject to the spirit and temper of the age in which we live.

The Supreme Court of Arkansas has followed closely the decisions in England and of other States of the Union on this subject, which is clearly shown by a reference to the case of Joe Sullivant, 8 Ark. (3 Eng.), 400. *Charles* v. *The State*, 6 Eng., 389; *Pleasant* v. *The State*, 8 Eng., 360. These were all indictments against slaves for assault with intent to commit rape on white females.

The late Chief Justice Watkins who delivered the opinion of court in the latter case said : " The better authority would seem to be, that if the man accomplished his purpose by fraud, as when the woman supposed he was her husband, or obtained possession of her person by surprise, without intending to use force, it is not rape, because one of the essential ingredients of the offense is wanting ; so when force is used, but the assailant desists upon resistance being made by the woman, and not because of an interruption, it could not be said that his intention was to commit rape. We are bound to declare that this is the law applicable to negroes ; but whether there should not be an amendment, so as to punish as a distinct offense, and more severely than it can be under existing laws, the carnal knowledge of a white woman by a slave, or the attempt of it by fraud and without force, or the attempt without consummation in consequence of her resistance, is in our opinion worthy of the serious consideration of the legislature."

At the time this opinion was delivered, a negro was punished capitally for an attempt to commit rape on a white woman, while a white man for the same offense, was punished by imprisonment in the penitentiary, not less than three, nor more than twenty years.

The Chief Justice was evidently impressed with the necessity of an amendment of the law, but from the relation then existing between the races and the peculiarity of the law then in force, which gave rise to those cases, the suggested amendment of the law was intended to apply only to the servile race among us. But the law enunciated by the court in the case of *Pleasant* v. *The State*, as governing the crime of rape, was then and is now applicable alike to both races, and believing that an amendment of the law in the particulars enumerated is a matter worthy of the serious consideration of the legislature, we repeat and adopt the suggestion of the court in that case.

The counsel for the defendant insists that the indictment is fatally defective, because in alleging the felony which the accused intended to commit on entering the house, it does not charge that the assault on Mrs. Sled was made " feloniously, etc.," and because the indictment should have charged that the accused " feloniously, etc.," made the assault, as well as that the intent was " feloniously, etc.," to ravish and carnally know her forcibly and against her will.    And we are referred to *Milan* v. *The State*, 24 Ark., 346, in support of this argument.

It will be observed that this is an indictment for burglary and not for rape, or an attempt to commit rape.

The *gravamen* of the offense charged was that Pat. Bradley, unlawfully, feloniously and burglariously entered the dwelling-house of E. D. Sled in the night time, with intent to commit a felony, to-wit: rape on the body of M. J. Sled, a female.

The indictment is awkwardly drawn, but is believed to be substantially good; the burglary is described with sufficient certainty.    It would have been sufficient to have charged the defendant with entering the house of E. D. Sled in the night time, with intent to commit a felony, to-wit: rape on the body of Mrs. Mary J. Sled; without alleging an assault with intent to

commit rape upon the body of Mary J. Sled with intent feloniously to ravish and carnally know her forcibly and against her will, which latter averments may well be rejected as surplusage.

The case of *Milan* v. *The State* was unlike this. That was an indictment under our statute which provides that "Whosoever shall feloniously, wilfully and of his malice aforethought, assault any person with intent to murder, kill, rob or commit rape, etc.," "their counsellors, aiders and abettors, shall on conviction thereof be imprisioned in the jail and penitentiary house not less than three nor more than twenty-one years." The indictment charged: "That a colered man, named Milan, on, etc., at, etc., with force and arms in and upon one Haywood Branch then and there being in the peace of. God and the State, did make an assault, with intent to kill, and him the said Haywood Branch, then and there, feloniously, wilfully and of malice aforethought, did with a certain pistol, etc."

By our statute this offense was a felony, and as at common law it was necessary to charge all felonies with having been feloniously committed, so in case of a felony created by statute, it is equally necessary to charge the offense with having been committed with felonious intent; and the fatal defect of the indictment in that case was that it did not charge the defendant in the language of the statute with having feloniously, wilfully and of his malice aforethought, made the assault, as well as that the intent was feloniously, wilfully and of his malice aforethought to kill.

We are not disposed to interfere with the ruling of this court in that case; but remark again that this is not an indictment for rape, nor is it an indictment under our statute, which declares that "whosoever shall feloniously, wilfully and with malice aforethought, assault any person with intent to commit rape, etc." If it were an indictment under this latter statute, it would

be analogous to the case of *Milan v. The State*, and the reasoning and decision of the court in that case would apply to this. But, as before stated, the indictment here is for burglary, and the felony charged was rape upon the person of Mary J. Sled, and if this is distinctly alleged in the indictment, and we think it is, with sufficient certainty, we must hold the indictment good, although the felony charged is not described in the indictment with the technical accuracy that would be required in an indictment for an attempt to commit rape.

The next question to be decided, is as to the sufficiency of the evidence to warrant the verdict of ,he jury.

Does the proof show that the defendant entered the house of E. D. Sled, in the night time, with intent to commit rape on the body of Mary J. Sled?

The testimony of Mary J. Sled, the prosecutrix, and of her husband, E. D. Sled, and confession of the defendant, which we will not repeat here, tended strongly in the opinion of the court, to prove that the defendant entered the house of E. D. Sled with intent to commit rape on the person of Mary J. Sled, and was sufficient to warrant the jury in finding the defendant guilty, wherefore let the judgment of the Circuit Court be affirmed.